**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ICL PERFORMANCE PRODUCTS, LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:09-CV-01818-JAR |
| | ) |
| HAWKINS, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This breach of contract action is before the Court on Defendant's Motion for Partial Summary Judgment [ECF No. 97], ICL Performance Products, L.P.'s Motion for Summary Judgment on Hawkins' Counterclaims [ECF No. 99] and ICL Performance Products, L.P.'s Motion for Summary Judgment [ECF No. 100]. The Motions have been fully briefed and are ready for disposition. For the following reasons, each motion will be denied.

**Background**

ICL Performance Products, L.P. ("ICL-PPLP") is a limited partnership that sells phosphoric acid and produces a complete line of phosphorus and phosphorus-derivative products. Hawkins, Inc. ("Hawkins") is a formulator, manufacturer, blender, and distributor of industrial and laboratory chemicals. The parties have done business with each other since 2005,[1] with ICL-PPLP selling and Hawkins buying food grade phosphoric acid ("PA") and other products that have PA as a raw material.

This action is based on disputed issues of contract interpretation. Hawkins and ICL-PPLP

---

[1] Prior to 2005, Hawkins purchased phosphoric acid from ICL-PPLP's predecessor company, Astaris, LLC.

entered into a long-term contract dated December 1, 2006 for sale of PA with a concentration of 75% ("75% PA") at a "firm" price of $.24/lb for the period January 1, 2007 through December 31, 2008 ("the 2007-08 Contract"). The 2007-08 Contract contained a provision stating "Annual QTY Share %" was 25% and estimated at five million pounds. The 2007-08 Contract contained the following Excuse of Performance ("EOP") provision:

> (a) Either party may suspend or cancel deliveries hereunder if the performance of this contract is hindered or prevented by events beyond its reasonable control and which events make it impracticable to manufacture, transport, accept or use the goods or material upon which the manufacture of the goods is dependent. Such events include, but are not limited to, war, riot, sabotage, explosion, accident, flood, fire, or other acts of God; lack of adequate fuel, power, raw materials, labor, containers or transportation facilities; compliance with governmental requests, laws, regulations, orders or actions; breakage or failure of machinery or apparatus; national defense requirements; or labor trouble, strike lockout or injunction (in no event shall either party be required to settle a labor dispute against its own best judgment).
>
> (b) If Seller determines that its ability to supply the goods, or obtain a sufficient quantity of any material used in the manufacture of the goods, is hindered, limited or made impracticable, Seller may allocate its available supply of goods (without being obligated to acquire additional supplies of goods or materials) among itself and its purchasers in Seller's sole discretion.
>
> (c) Deliveries suspended or cancelled under the provisions of this section, shall be so suspended or cancelled without liability, but such cancellation or suspension shall otherwise not affect the remaining terms of this contract.

Pursuant to the 2007-08 Contract, Hawkins purchased 75% PA from ICL-PPLP for $.24/lb in 2007. In January 2008, Hawkins placed orders for 75% PA to ship on May 1, 2008, and ICL-PPLP accepted those purchase orders with written confirmation.

Whether "price relief" under the 2007-08 Contract was initially offered by Hawkins or requested by ICL-PPLP is a disputed issue of fact; however, it is undisputed that on January 4, 2008, the parties increased the 2007-08 Contract price from $.24/lb. to $.32/lb., and Hawkins'

2

estimated volume from five to seven million pounds. No other contract terms were amended.

In March and April of 2008, ICL-PPLP began notifying customers that as a result of a "shortage of raw materials," it would be invoking the EOP clauses in their contracts and that it would not be able to ship current or future orders of PA-based products. Most of these customers then bargained for supply by entering into new contracts and/or amendments to buy PA-based products from ICL-PPLP for substantially increased prices. The parties dispute the factual basis for ICL-PPLP's materials shortage.

Hawkins became aware of this situation in April 2008. Whether Hawkins suggested offering price relief to ICL-PPLP on April 18, 2008 in exchange for a supply contract for 2009 is another disputed issue of fact. Nevertheless, on April 24, 2008, the parties engaged in a series of communications, at which time ICL-PPLP told Hawkins it was going to invoke its EOP clause and stop shipping Hawkins product during the shortage as it did with its other customers unless Hawkins agreed to its proposed price modification of their 2007-08 Contract (from $.32/lb. to $.69/lb) in addition to the terms of a supply contract for 2009. ICL-PPLP does not dispute that had it stopped shipping 75% PA to Hawkins in April and/or May 2008, Hawkins would have run out of 75% PA within two weeks.

A "First Amendment to Contract for Sale" ("the May 2008 Amendment") and the 2009 Contract were signed by Hawkins on May 5, 2008 and by ICL-PPLP on May 8, 2008. The May 2008 Amendment modified the price of the 2007-08 contract, increasing it to $.69/lb. No change was made to the previously agreed-upon volume estimate of 7,000,000 pounds. The May 2008 Amendment incorporated the terms of the 2007-08 Contract with the following proviso: "(3) All the terms of the Contract for Sale that are not expressly modified by the terms of this

Amendment are ratified and confirmed and shall remain in full force and effect." The parties performed under the May 2008 Amendment throughout the remainder of 2008.

The 2009 Contract provided for the sale of 75% PA for the period January 1, 2009 through December 31, 2009. Pricing was set at a 5% discount to the list price as of January 1, 2009, with no firmness of caps. The 2009 Contract estimated Hawkins' "Annual QTY Share %" of 50% at 12 million pounds. Before signing the 2009 Contract, Hawkins insisted ICL-PPLP's preprinted, standard form contract be modified to provide that "[t]his is not a take or pay contract.

In November 2008 Hawkins notified ICL-PPLP it had no intention of buying any PA from ICL-PPLP in 2009 because they could cover their volumes with other suppliers at lower pricing. ICL-PPLP offered to amend the pricing of the 2009 Contract to list minus 20%, but Hawkins did not accept the terms offered by ICL-PPLP and the 2009 Contract was not amended. There is no dispute that Hawkins did not purchase any PA from ICL-PPLP in 2009.

On November 3, 2009, ICL-PPLP filed this action for breach of contract. An amended complaint was filed on April 19, 2010. Hawkins filed its answer to the amended complaint and asserted counterclaims for breach of the 2007-08 contract, breach of the implied covenant of good faith and fair dealing, and negligent and intentional misrepresentation regarding the availability of phosphorous-based products, thereby forcing unfair terms and substantially increased prices. Hawkins has moved for partial summary judgment on ICL-PPLP's amended complaint and its first and second counterclaims. ICL-PPLP has moved for summary judgment on its claim and all of Hawkins' counterclaims.

**Legal Standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated separately on its own merits to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal-Mogul Ignition Co., 519 F.Supp.2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir. 1983). When considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion." Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 239 (1st Cir. 1996). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

5

one-sided that one party must prevail as a matter of law." Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir.1993) (citing Anderson, 477 U.S. at 251-52).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." Kampouris v. St. Louis Symphony Soc., 210 F.3d 845, 847 (8th Cir.2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." Id.

**Discussion**

Hawkins argues that its motion for partial summary judgment rests on two issues of contract interpretation, namely, whether ICL-PPLP's "threats" of April 24, 2008 to stop shipment of PA were authorized under the EOP of the 2007-08 Contract, and whether Hawkins was obligated to purchase 50% of its 2009 "requirements" of 75% PA from ICL-PPLP under the 2009 Contract, regardless of price. ICL-PPLP counters in both its response to Hawkins' motion and its motion for summary judgment on Hawkins' counterclaims, that Hawkins' claims and defenses are all based on a single proposition, i.e., that ICL-PPLP was not actually experiencing a materials shortage in April 2008, and that Hawkins has not presented any facts in support of that proposition.

In its motion for summary judgment, ICL-PPLP asserts that under the 2009 Contract, Hawkins was required to buy 50% of its annual 75% PA, estimated at 12 million pounds, from ICL-PPLP. Hawkins responds that the 2009 Contract is not enforceable as a "requirements" contract and that its execution was procured in bad faith, through economic duress and use of

unconscionable business practice, all stemming from ICL-PPLP's contention that it was experiencing a materials shortage in early 2008.

The Court has carefully reviewed the extensive record in this matter and finds there are genuine issues of material fact which preclude entry of summary judgment on the parties' respective claims, including but not limited to whether ICL-PPLP experienced a raw materials shortage in early 2008. In support of its claim that it had a shortage, ICL-PPLP presents evidence of its suppliers' failure to deliver materials in the first half of 2008 as well as its extra-contractual efforts to address the shortage (Doc. No. 104, ICL-PPLP's Statement of Undisputed Material Facts in Support of its Motions for Summary Judgment, ¶¶ 154-208).[2] Hawkins disputes the majority of ICL-PPLP's facts in this regard (Doc. No. 105). In support of its position, Hawkins provides, *inter alia*, the report of phosphate market expert Andy Jung, wherein he acknowledges that while phosphates pricing reached an all-time high in 2008, the supply of material largely did not change. (Doc. No. 101-32, p. 3) It is Jung's opinion that there was no "shortage" of phosphates in 2007-08 as claimed by ICL-PPLP. (Id.) All of this would certainly be relevant for a jury to consider when deciding whether or not a material shortage prevented ICL-PPLP from providing Hawkins with the previously agreed upon volumes of 75% PA at the previously agreed upon prices. As a result, the parties' cross motions for summary judgment will be denied.

**Conclusion**

---

[2]These statements of facts reference declarations of Kristi Meyer, former Operations Planning Manager of ICL-PPLP (Doc. No. 104-19), Terrence Zerr, Vice President of Operations of ICL-PPLP (Doc. No. 104-21), Angela Schewe, Industrial Business Director of ICL-PPLP (Doc. No. 104-1), and Kevin Lawrence, Purchasing and Supply Chain Lead for Monsanto Company (Doc. No. 104-41), as well as deposition testimony from Zerr (Doc. No. 104-33), Schewe (Doc. No. 104-28) and and Randy Shucart (Doc. No. 104-37).

For the foregoing reasons, Hawkins' motion for partial summary judgment, ICL-PPLP's motion for summary judgment on Hawkins' counterclaims, and ICL-PPLP's motion for summary judgment should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment [ECF No. 97] is **DENIED**.

**IT IS FURTHER ORDERED** that ICL Performance Products, L.P.'s Motion for Summary Judgment on Hawkins' Counterclaims [ECF No. 99] is **DENIED**.

**IT IS FURTHER ORDERED** that ICL Performance Products, L.P.'s Motion for Summary Judgment [ECF No. 100] is **DENIED**.

Dated this 7th day of February, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE