# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ICL PERFORMANCE PRODUCTS, LP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:09-CV-01818-JAR |
| ) | |
| HAWKINS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff ICL Performance Products, L.P.'s Motion for Reconsideration and Memorandum in Support Thereof [ECF No. 117]. The motion is fully briefed and oral argument was held on the motion on April 16, 2012. For the following reasons, the motion will be granted in part and denied in part.

**Background**

In this motion, ICL Performance Products, L.P. ("ICL") asks the Court to reconsider the denial of its motions for summary judgment and rule on two threshold issues of contract interpretation. Specifically, ICL seeks summary judgment on the legal meaning and effect of two terms of the parties' 2008 and 2009 Contracts for the sale of purified phosphoric acid (PA): (1) the phrase "this is not a take or pay contract" in the 2009 Contract; and (2) the excuse of performance (EOP) provision in the 2008 Contract. ICL also asks the Court to reconsider its ruling that whether ICL experienced a raw materials shortage in early 2008 is a genuine issue of material fact.

**Discussion**

The Federal Rules of Civil Procedure "do not mention motions for reconsideration."

Broadway v. Norris, 193 F.3d 987, 989 (8th Cir.1999). However, the Eighth Circuit has determined that motions for reconsideration are "nothing more than Rule 60(b) motions when directed at non-final orders." Anderson v. Raymond Corp., 340 F.3d 520, 525 (8th Cir.2003) (citing Broadway, 193 F.3d at 989). District courts have considerable discretion in deciding whether to reconsider an interlocutory order and "may" relieve a party from such an order when, for example, the party demonstrates "mistake, inadvertence, surprise, or excusable neglect" or "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(1), (6). Elder-Keep v. Aksamit, 460 F.3d 979, 984-85 (8th Cir. 2006).

Reconsideration is "an extraordinary remedy" that should be granted only when "exceptional circumstances" will both "den[y] the moving party a full and fair opportunity to litigate [its] claim" and prevent it from "receiving adequate redress." Furminator, Inc. v. Munchkin, Inc., 2009 WL 1140117, at *2 (E.D. Mo. April 28, 2009) (citing Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc., 413 F.3d 897, 903 (8th Cir. 2005) and Harley v. Zoesch, 413 F.3d 866, 871 (8th Cir. 2005)). A motion to reconsider is "not a vehicle for simple reargument on the merits." Broadway, 193 F.3d at 989-90. It is also insufficient for the moving party to argue that it will be subject to potentially unfavorable consequences based on the Court's original ruling. Furminator, 2009 WL 1140117, at *3 (citing Atkinson v. Prudential Prop. Co., 43 F.3d 367, 373 (8th Cir. 1994).

With these principles in mind, the Court will exercise its discretion and reconsider its order denying ICL's motions for summary judgment.

**(1) "Take or pay contract"**

The parties' 2009 Contract provided for the sale of 75% PA for the period January 1,

2009 through December 31, 2009. Pricing was set at a 5% discount to the list price as of January 1, 2009, with no firmness of caps. The 2009 Contract estimated Hawkins' "Annual QTY Share %" of 50% at 12 million pounds. Before signing the 2009 Contract, Hawkins insisted ICL's preprinted, standard form contract be modified to provide that "[t]his is not a take or pay contract." While the parties agree their 2009 Contract was not a "take or pay" contract, they disagree on the legal effect of this language.

On summary judgment, Hawkins argued this language meant it was not required to purchase *any* PA from ICL in 2009 if ICL's prices were unattractive, whether expressed in pounds or as a percentage. (Defendant's Memorandum of Law in Support of Motion for Partial Summary Judgment, Doc. No. 98, pp. 3, 20-22) ICL argued this language required Hawkins to purchase 50% of its annual PA requirements from ICL in 2009, and that the estimated 12 million pounds was not a specified minimum, but rather an estimate of the number of pounds of PA Hawkins would purchase under the contract. (Plaintiff ICL Performance Products, L.P.'s Memorandum in Support of its Motion for Summary Judgment, Doc. No. 102, pp. 10-13).

In its motion for reconsideration, ICL takes the position that the phrase "this is not a take or pay contract" is unambiguous and that the Court can construe its meaning by reference to the plain language of the 2009 Contract. In response, Hawkins takes the position that the inclusion of two quantity terms in the 2009 contract, i.e., the estimated annual volume of 12 million pounds, and the annual quantity share of 50%, makes the contract susceptible to more than one interpretation and, therefore, ambiguous as to which term(s) the parties intended to modify with the phrase "[t]his is not a take or pay contract."

"The cardinal rule of [contract] interpretation is to ascertain, if possible, from the

instrument itself the intention of the parties, and to give effect to that intention." McCarthy Bros. Const. Co. v. Pierce, 832 F.2d 463, 467 (8th Cir. 1987)(citing H.K. Porter Co. v. Wire Rope Corp. Of America, 367 F.2d 653, 660 (8th Cir. 1966). "When the terms of a contract clearly indicate the intent of the parties, the provisions of the contract are controlling and must be applied without reference to any rules of interpretation." Id. In addition, terms of art and technical terms must be given their technical meaning when the contract involves a technical matter. Restatement (Second) of Contracts § 202(3)(b)(1981).

The phrase "take or pay" is a term of art. Take or pay contracts provide for alternative means of performance when a supply contract provides for a specified minimum quantity of product. The buyer has the option to either pay and take a specified minimum quantity of product now, or pay and take the specified minimum quantity of product later. See Superfos Investments Ltd. v. FirstMiss Fertilizer, Inc., 821 F.Supp. 432, 434 (S.D. Miss. 1993)(citations omitted). In this way, the seller's assumption of the risk of production is offset by the buyer's assumption of the risk of market demand. Id. ("By assuring the buyer a supply of [product], the seller bears the risk of production. To compensate the seller for this risk, the buyer agrees to take, or pay for if not taken, a minimum quantity of [product]. The buyer thus bears the risk of market demand, and if the demand for [product] decreases, the seller is assured of receiving the price for the contract quantity delivered each year.") See also Koch Hydrocarbon Co. v. MDU Resources Group, Inc., 988 F.2d 1529, 1533 (8th Cir. 1993); Prenalta Corp. v. Colorado Interstate Gas Co., 944 F.2d 677, 689 (10th Cir.1991); Universal Resources Corp. v. Panhandle Eastern Pipe Line Co., 813 F.2d 77, 80 (5th Cir. 1987).

While the phrase "take or pay" is a term of art consistently defined in the same manner

4

by every court that has construed it or considered it, counsel acknowledged at oral argument that there is no case law interpreting the phrase "this is *not* a take or pay contract." In matters of contract interpretation, all terms are given their plain, ordinary, and usual meanings. Hawkins' interpretation of the phrase "this is not a take or pay contract" results in a non-binding contract. The Court will not interpret contract language in a way that would render the contract illusory. Accordingly, under the specific circumstances of this case, and in the context of the parties' 2009 Contract, the Court finds and concludes there is no ambiguity in the phrase "this is not a take or pay contract." The Court construes the phrase "this is not a take or pay contract" as the converse of a "take and pay" contract, meaning there was no specified minimum amount of PA Hawkins was required to purchase from ICL. The estimated contract volume, 12 million pounds, was merely an estimate of the PA Hawkins would need in 2009, and not a specified minimum amount it had to purchase. Thus, Hawkins remained contractually obligated to purchase 50% of its annual PA requirements from ICL in 2009, whether its requirements were 12 million pounds or 100 pounds. Because Hawkins' "annual quantity share %" of 50% was capable of ascertainment by the end of the contract term, the 2009 contract is a binding contract.

**(2) EOP**

The 2007-08 Contract contained the following Excuse of Performance ("EOP") provision:

> (a) Either party may suspend or cancel deliveries hereunder if the performance of this contract is hindered or prevented by events beyond its reasonable control and which events make it impracticable to manufacture, transport, accept or use the goods or material upon which the manufacture of the goods is dependent. Such events include, but are not limited to, war, riot, sabotage, explosion, accident, flood, fire, or other acts of God; lack of adequate fuel, power, raw materials, labor, containers or transportation facilities; compliance with governmental requests, laws, regulations, orders or actions; breakage or failure of machinery or

apparatus; national defense requirements; or labor trouble, strike lockout or injunction (in no event shall either party be required to settle a labor dispute against its own best judgment).

(b) If Seller determines that its ability to supply the goods, or obtain a sufficient quantity of any material used in the manufacture of the goods, is hindered, limited or made impracticable, Seller may allocate its available supply of goods (without being obligated to acquire additional supplies of goods or materials) among itself and its purchasers in Seller's sole discretion.

(c) Deliveries suspended or cancelled under the provisions of this section, shall be so suspended or cancelled without liability, but such cancellation or suspension shall otherwise not affect the remaining terms of this contract.

In support of its motion for reconsideration, ICL argues the 2008 Contract is unambiguous with respect to its right under subsection (b) to allocate its available supply of goods in its sole discretion, without having to find additional supplies.

In response, Hawkins agrees the language of the EOP is unambiguous, but notes the parties disagree as to which subsection governed ICL's conduct. Hawkins takes the position that because ICL threatened to suspend or cancel deliveries of PA to Hawkins on April 24, 2008, subsections (a) and (c) apply, and ICL did not comply with either one.

As noted above, the guiding principle of contract interpretation is determining the parties' intent and giving effect to that intent. Intent is not determined merely by looking at isolated provisions not considered in the context of the entire agreement. Spirtas Co. v. Division Of Design and Const., 131 S.W.3d 411, 416 (Mo.App. W.D. 2004)(citing Cent. City Ltd. P'ship v. United Postal Sav. Ass'n, 903 S.W.2d 179, 182–83 (Mo.App. E.D. 1995). A contract must be read as a whole. Id. (citing City of Harrisonville v. Pub. Water Supply Dist. No. 9 of Cass County, 49 S.W.3d 225, 231 (Mo.App.W.D. 2001). The Court cannot construe subsection (b) of the EOP in a vacuum, without examining the facts and circumstances that existed between the

parties as of April 24, 2008, which facts and circumstances the Court has found to be in dispute. Application of the EOP in this case depends on ICL's subjective belief that its performance under the 2007-2008 Contract was rendered "impracticable" as a result of events "beyond its reasonable control," which is clearly a question for the fact finder. The factual basis for ICL's purported raw materials shortage in early 2008 is disputed, and precludes summary judgment for either party.

**Conclusion**

After reconsideration, the Court finds and concludes as a matter of law that in this specific case, and in the context of the 2009 Contract, there is no ambiguity in the phrase "this is not a take or pay contract." The legal meaning and effect of the phrase "this is *not* a take or pay contract" is that Hawkins was not relieved of its contractual obligation to purchase 50% of its PA requirements from ICL in 2009.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff ICL Performance Products, L.P.'s Motion for Reconsideration and Memorandum in Support Thereof [ECF No. 117] is **GRANTED** in part.

**IT IS FURTHER ORDERED** that upon reconsideration, the Court's denial of summary judgment is reversed and summary judgment is entered in favor of ICL and against Hawkins on the limited issue of the legal meaning and effect of the phrase "this is not a take or pay contract," specifically that Hawkins remained obligated under the 2009 Contract to purchase 50% of its PA requirements from ICL in 2009.

**IT IS FURTHER ORDERED** that in all other respects, Plaintiff ICL Performance Products, L.P.'s Motion for Reconsideration [ECF No. 117] is **DENIED**.

Dated this 24th day of April, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE